IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SANDRA G. BLAKNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV874 |
| | ) | |
| NORTH CAROLINA A&T STATE | ) | |
| UNIVERSITY and DR. DAVID | ) | |
| WAGNER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Currently before this Court is Defendants' Motion to
Dismiss Plaintiff's Complaint, alleging violations of the Age
Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.
§ 621 et seq., and Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e et seq., among other claims. (See
Doc. 7.) Defendants have filed a brief in support of their
motion, (Doc. 8); Plaintiff has responded in opposition, (Doc.
14); and Defendants have replied, (Doc. 17). For the reasons
that follow, this court finds that Defendants' motion to dismiss
should be granted in part and denied in part. To the extent that
Plaintiff has asked this court for leave to amend her Complaint,
that request will be denied.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts, construed in the light most favorable to Plaintiff, are as follows.

Defendant North Carolina A&T State University ("N.C. A&T") is part of the University of North Carolina state school system, a state agency. (See Verified Compl. ("Compl.") (Doc. 4) ¶ 2.)[1] Beginning in February 2014 and continuing through December 31, 2016, N.C A&T employed Plaintiff as a nurse in its student health center. (Id. ¶¶ 1, 4; see Defs.' Mot. to Dismiss, Ex. 1 (Doc. 7-1).)[2] It is undisputed that Plaintiff turned forty years

---

[1] Though styled a Verified Complaint, Plaintiff has not presented to this court any verification.

[2] Defendants attached Plaintiff's November 10, 2016 resignation letter to their motion to dismiss, arguing that this court may consider it at this stage of the proceedings because Plaintiff incorporated it by reference into the Complaint. (See (Defs.' Mem in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 8) at 6 n.4.) Plaintiff then attached to her response an affidavit and exhibits, which she argues demonstrate her compliance with certain jurisdictional requirements. (Pl.'s Br. in Opp'n to Mot. to Dismiss ("Pl.'s Br.") (Doc. 14) at 1-2; Affidavit of Sandra Blakney ("Blakney Aff."), Exs. 1, 2 (Doc. 13-1).) Plaintiff failed to allege in her Complaint certain facts contained in these exhibits and therefore separately moves this court for leave to amend her Complaint to include those additional facts. (Pl.'s Br. (Doc. 14) at 1-2.)

This court will consider these documents without converting Defendants' motion to one for summary judgment. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (directing courts to consider documents incorporated by reference into the complaint); see also Goines v. Valley Cmty.

(Footnote continued)

of age prior to beginning employment with N.C. A&T. (See Compl. (Doc. 4) ¶ 1.)

Beginning in August 2015, N.C. A&T employed Defendant David Wagner ("Defendant Wagner" or "Dr. Wagner") as the Physician Director of its student health center. (Id. ¶¶ 3, 5; see Blakney Aff., Ex. 1 (Doc. 13-1) at 4.)[3] Plaintiff alleges that Dr. Wagner is a citizen and resident of Guilford County, North Carolina. (Compl. (Doc. 4) ¶ 3).

Plaintiff alleges that Defendant Wagner's position as Physician Director required him to evenly split his time between

---

Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted) (directing courts to consider documents submitted by movant at motion to dismiss stage so long as the documents were integral to the complaint and authentic); Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009) (permitting the court to look outside the complaint to resolve jurisdictional facts).

This court summarily denies Plaintiff's motion for leave to amend the Complaint as moot regarding her age discrimination claim and as futile to the other claims. Even considering the additional facts contained in the exhibits, this court would find that Plaintiff has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). See Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) (citation omitted) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards . . . .").

[3] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

administrative and clinical work. (Id. ¶ 6.) Defendant Wagner,
however, allegedly delegated his clinical work to nurse
practitioners. (See id. ¶¶ 10-12.) Clinical work included
patient intake, to which Plaintiff often attended. (See id.
¶¶ 7, 9.) During Plaintiff's shift, she and one other colleague,
Frances Cole (who is over seventy years old), were the only
nurses attending to patient intake. (See id. ¶¶ 7-8.)

Defendant Wagner insisted that the patient-intake process
take no longer than twenty minutes, a new requirement that he
formally implemented in June 2016. (See id. ¶¶ 16, 20; Blakney
Aff., Ex. 1 (Doc. 13-1) at 4.) Plaintiff took issue with this
demand, asserting to Dr. Wagner at the time and in her Complaint
now, that the twenty-minute intake window was not feasible given
her other duties and because there were only two nurses
performing intake. (See Compl. (Doc. 4) ¶¶ 18-21, 40.) Plaintiff
alleges that Dr. Wagner "erroneously asserted" that only a check
of the vital signs needed to be performed within twenty minutes
but that the nurse practitioners "directed that Blakney assess
the patient's vital signs, allergies, medications . . . among
other tasks" within twenty minutes. (See id. ¶¶ 46-47.)

Before N.C. A&T hired Dr. Wagner, Plaintiff had never been
disciplined at work. (Id. ¶ 14.) She alleges that Defendant
Wagner caused her performance review to be downgraded in the

spring of 2016. (Id. ¶¶ 22-24.) Plaintiff's April 4, 2016 evaluation noted her work as "outstanding." (Id. ¶ 22.)[4] Defendant Wagner allegedly stated at some point thereafter that Plaintiff's evaluation should be changed because "nobody is outstanding." (Compl. (Doc. 4) ¶ 23.) Plaintiff's next evaluation, on May 15, 2016, was allegedly "downgraded" at Defendant Wagner's direction to "very good," noting a need to "pay attention to detail." (See id. ¶ 24; Blakney Aff., Ex. 1 (Doc. 13-1) at 4.)[5]

Besides the new intake procedure, Plaintiff had additional difficulties with Defendant Wagner. Plaintiff alleges that, shortly after he started as Physician Director, Dr. Wagner made "comments of a sexual nature that caused [P]laintiff to be uncomfortable." (Compl. (Doc. 4) ¶ 5.) On one specific occasion, Plaintiff allegedly informed Defendant Wagner that he was using too much lubricant on a patient during a vaginal examination, to which Dr. Wagner responded by telling the patient that he was "going to use less lubricant; if you experience pain, it is Blakney's fault." (Id. ¶¶ 28-29.)

---

[4] Plaintiff adds, in her responsive brief, that she was rewarded with a raise following this evaluation. (Pl.'s Br. (Doc. 14) at 4.)

[5] Plaintiff again adds, in her responsive brief, that this downgrade caused her to lose the raise that she had earned. (Pl.'s Br. (Doc. 14) at 4.)

On August 18, 2016, Plaintiff and one of her supervisors met with N.C. A&T's Assistant Dean of Student Affairs, Marc Williams, to discuss Blakney's concerns about Dr. Wagner, "including his inappropriate sexual comments." (Id. ¶ 30.) On August 25, 2016, Defendant Wagner verbally warned Plaintiff about her alleged "failure to perform intake for all patients within a twenty-minute time window." (Id. ¶ 31.)

On September 9, 2016, Dr. Wagner issued a written warning threatening Plaintiff with dismissal due to "[fifteen] incidents of patient intake taking longer than twenty minutes." (Id. ¶ 32; Pl.'s Br. (Doc. 14) at 4 n.2.) Plaintiff alleges that the September 9th written warning cost her a raise, was forwarded to the human resources department, and might have become part of her official personnel file. (Compl. (Doc. 4) ¶¶ 34, 36.)[6] The September 9th warning demanded "a 100% improvement in intake within 60 days." (Compl. (Doc. 4) ¶ 37.) When Plaintiff received that warning, Dr. Wagner verbally warned Plaintiff about her patient-intake shortcomings as well. (Id. ¶ 38.) Dr. Wagner also told Plaintiff that she should have raised her concerns with him instead of Assistant Dean Williams. (Id. ¶ 35.) Plaintiff

---

[6] Plaintiff's charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") states that the August 25th warning cost her the annual raise, not the September 9th written warning. (See Blakney Aff., Ex. 1 (Doc. 13-1) at 4.) The court credits the allegation in the Complaint.

responded that completing one-hundred percent of patient intakes within twenty minutes was not possible. (<u>Id.</u> ¶¶ 39-40.) Dr. Wagner told her that the "higher-ups" were complaining about the intake times. (<u>Id.</u> ¶ 43.) Plaintiff informed him that she would speak with the higher-ups about it, and Dr. Wagner allegedly responded in a threatening tone: "you've already been up there, haven't you." (<u>Id.</u> ¶¶ 44-45.)

Plaintiff alleges that she was not the only nurse to receive a written warning on September 9th for a failure to check in one-hundred percent of patients within twenty minutes. (<u>Id.</u> ¶ 33.) She alleges, however, that a lone male nurse did not receive such warning. (<u>See id.</u>) Those who did, including Ms. Cole, allegedly spoke with N.C. A&T's human resources department regarding Dr. Wagner's intake policy. (<u>See id.</u> ¶¶ 48-49.) Plaintiff asserts that human resources responded by asking Ms. Cole when she planned on retiring, (<u>id.</u> ¶ 50), and apparently noted that one of the younger nurses was excelling at patient intake, (<u>id.</u> ¶¶ 51-52).

Plaintiff spoke to Assistant Dean Williams again on September 15, 2016. (Blakney Aff., Ex. 1 (Doc. 13-1) at 9.) Assistant Dean Williams informed Plaintiff that he had told Defendant Wagner that Plaintiff had come to see him (Williams). (<u>Id.</u>) Williams also asked Plaintiff to take her complaints

directly to Defendant Wagner in the future. (Id.) Plaintiff told Williams that she had spoken directly with Defendant Wagner, but she would not continue to do so because of his "disrespectful, arrogant attitude." (Id.)[7]

In mid-September 2016, sometime after the September 9th warning, Plaintiff filed a formal grievance with N.C. A&T "regarding her issues with Wagner." (See Compl. (Doc. 4) ¶ 53.) On October 17, 2016, Plaintiff received a follow-up letter to the September 9th warning, informing her that she was performing at least ninety-percent of her intakes within the twenty-minute window. (Id. ¶ 54.)

On October 26, 2016, Plaintiff sent a follow-up email about her formal grievance. (Id. ¶ 55.) Someone responded on October 27, 2016, stating that an investigative report would be completed by October 28, 2016. (Id. ¶ 56.) Plaintiff alleges that no response was communicated to her on October 28th. (Id. ¶ 57.) Instead, she claims that she received a response at some unalleged time. (Id. ¶ 63.) It was dated November 7, 2016 and delivered to an employee mailbox that Plaintiff rarely used and not otherwise transmitted to her. (Id. ¶¶ 63, 65.) N.C. A&T

---

[7] Plaintiff does not allege these facts in the Complaint, but they are contained in an Equal Employment Opportunity ("EEO") intake form from the North Carolina Office of State Human Resources. (Blakney Aff., Ex. 1 (Doc. 13-1) at 6-9.)

indicated in the review that Dr. Wagner's behavior towards Plaintiff was unacceptable and could create a hostile work environment if it continued. (See id. ¶ 64.)

On or around November 10, 2016, Plaintiff noticed her resignation, effective December 31, 2016. (Id. ¶ 62; Defs.' Mot. to Dismiss, Ex. 1 (Doc. 7-1).) She alleges that she resigned because she feared termination, which allegedly would have caused her to lose her retirement benefits. (Compl. (Doc. 4) ¶¶ 58, 62.) Plaintiff asserts that, had she been aware of the November 7th response by the time she resigned, "she may have decided" not to. (Id. ¶ 70.) Plaintiff claims that she was replaced by a younger and less-qualified certified medical assistant. (Id. ¶¶ 66-67.) She vaguely alleges that at least one of her supervisors "advised" that Defendant Wagner intended to replace the older nurses with younger ones. (Id. ¶ 69.)

Plaintiff alleges generally that Defendant Wagner, as an agent of Defendant N.C. A&T, and whose alleged misconduct N.C. A&T ratified, acted "intentionally, with malice, spi[t]e and ill will towards plaintiff in retaliation for her protected activity of approaching Dean Williams." (Id. ¶¶ 59-61.) As a result, Plaintiff alleges that she suffered a loss in income, the loss of her health insurance through N.C. A&T, and a reduction in Social Security and retirement benefits. (Id. ¶ 71.)

On November 28, 2016, Plaintiff filed a charge of discrimination with the EEOC. (Blakney Aff. (Doc. 13-1) ¶ 3; Ex. 1 (Doc. 13-1) at 4.) The EEOC charge did not identify Dr. Wagner by name but described a "new Student Health Center Director," (see Ex. 1 to Blakney Aff. (Doc. 13-1) at 4), and an EEO intake form from the North Carolina Office of State Human resources did identify Dr. Wagner in a narrative section, (id. at 8-9). (It is unclear to this court if that EEO form was presented to the EEOC as well and/or filed with the North Carolina Office of State Human Resources.) On or around, but not before, December 20, 2016, Plaintiff received a dismissal and notice of rights from the EEOC, dated December 19, 2016. (See Blakney Aff. (Doc. 13-1) ¶ 4; Ex. 1 (Doc. 13-1) at 5.)

On March 20, 2017, Plaintiff initiated this action in Guilford County Superior Court by applying for an extension of time to file a complaint, which was granted on the same day, giving Plaintiff until April 10, 2017 to file a complaint. (Blakney Aff. (Doc. 13-1) ¶ 5; Ex. 2 (Doc. 13-1) at 11.) Plaintiff attached to that application the December 19, 2016 EEOC right-to-sue notice setting forth that she had ninety days to sue from receipt. (Blakney Aff., Ex. 2 (Doc. 13-1) at 12.) The application for an extension of time to file a complaint also failed to identify Dr. Wagner. (See id. at 11.) A civil

summons to be served on N.C. A&T with the order extending time to file a complaint was also prepared on March 20, 2017. (Id. at 13.) The civil summons did not identify Defendant Wagner. (Id.)[8] Plaintiff filed her complaint in Guilford County Civil Superior Court on April 10, 2017. (See Doc. 1-1 at 15.)

On September 29, 2017, Defendants petitioned this court for removal pursuant to 28 U.S.C. § 1441(a). (Doc. 1 at 1-2.) On October 26, 2017, Defendants moved to dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim under Federal Rules of Civil

---

[8] Generally, failure to name a party in an EEOC charge means that a plaintiff did not exhaust administrative remedies as to that party. See Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 458-59 (4th Cir. 1988); see also Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998) (quoting 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e)) ("The individual defendants are not subject to personal liability because they were not named as respondents in any of Causey's EEO charges. . . . Under Title VII and the ADEA, a civil action may be brought only 'against the respondent named in the charge.'").

One exception to this rule is the "substantial-identity" exception, which permits a plaintiff to sue in district court previously unnamed defendants that are substantially or functionally identical to named ones. Mayes v. Moore, 419 F. Supp. 2d 775, 783 (M.D.N.C. 2006). Assuming (without finding) that Plaintiff could meet the substantial-identity exception because of the similar interests at stake, the lack of prejudice, and the employer-employee relationship between the co-defendants, see id., this court proceeds with the claims against Defendant Wagner because they will ultimately be dismissed and because Defendants have not raised the issue.

Procedure 12(b)(1), 12(b)(2), and 12(b)(6), respectively. (Defs.' Mot. to Dismiss (Doc. 7) at 1.)

## II.  **CLAIMS FOR RELIEF**

Plaintiff appears to bring each claim against both Defendants. She sues Defendant Wagner in his individual and official capacity as an agent of N.C. A&T, (Compl. (Doc. 4) at 1.)

Plaintiff's first two claims for relief allege age and sex discrimination in violation of the ADEA and Title VII, respectively. (Id. ¶¶ 72-87.) In each of her first two claims for relief, Plaintiff seeks compensatory damages, as well as declaratory and injunctive relief, including reinstatement. (Id. ¶¶ 77-79, 85-87.)

Plaintiff's third claim for relief alleges that Defendants retaliated against Plaintiff, specifically by means of the August 25, 2016 verbal warning and the September 9, 2016 written warning, for engaging in the protected activity of meeting with Assistant Dean Williams. (See id. ¶¶ 88-92.) Plaintiff alleges that the retaliation, taken together with the alleged untimely response to her formal grievance, caused her to lose confidence in the meaningfulness of the administrative remedies available to her, and she "concluded that she would be discharged and lose her retirement benefits if she did not immediately resign." (Id.

¶ 91.) In her third claim for relief, Plaintiff seeks monetary damages and declaratory and injunctive relief, including reinstatement. (Id. ¶ 92.)

Plaintiff's fourth claim for relief alleges an "interference with administrative remedies." (Id. at 8.) Plaintiff alleges that she should not be required to exhaust administrative remedies because they are futile, (id. ¶¶ 93-98); yet also claims that she filed a timely charge of discrimination with the EEOC, received a right-to-sue letter, and complied with the requisite timeline in filing this action, (id. ¶¶ 97-98). And finally, Plaintiff's fifth claim for relief alleges punitive damages. (Id. ¶¶ 99-100.)[9]

## III. **STANDARD OF REVIEW**

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[9] In her prayer for relief, Plaintiff also asks this court to treble any damages resulting from a violation of N.C. Gen. Stat. § 126 et seq. (Compl. (Doc. 4) at 8-9.)

that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet this plausibility standard; however, the plaintiff is not required to make out a prima facie case of discrimination or satisfy any heightened pleading requirements at the motion to dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir. 2015). The plaintiff need only plead facts that permit the court to reasonably infer each element of the prima facie case. McCleary-Evans, 780 F.3d at 585; see also Coleman v. Md. Ct. of App., 626 F.3d 187, 191 (4th Cir. 2010) (stating that a

complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race). If a plaintiff makes such a showing, the claim will usually survive a motion to dismiss, and the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the disparate treatment. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Defendants also move to dismiss the Complaint for lack of subject-matter and personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), respectively.

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject-matter jurisdiction. See Demetres v. East West Constr., Inc., 776 F.3d 271, 272 (4th Cir. 2015). A defendant may challenge subject-matter jurisdiction facially or factually. See Kerns, 585 F.3d at 192. In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. See id. In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. Id. at 192-93.

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must ultimately prove by a preponderance of the evidence that this court's personal jurisdiction over a defendant is proper. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). A plaintiff need only "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id. (citation omitted).

## IV.   **ANALYSIS**

### A.   **Jurisdictional Issues**

Before filing suit under the ADEA or Title VII, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful discrimination. 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1) (Title VII). The EEOC charge must be in writing and signed under oath. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing Edelman v. Lynchburg Coll., 535 U.S. 106, 112 (2002)). An EEOC charge need not be painstakingly precise but should describe generally the alleged discriminatory conduct. See Jones, 551 F.3d at 300 (citations omitted). Any claims brought in a subsequent lawsuit must be reasonably related to those in the EEOC charge or able to be "developed by reasonable investigation of the original complaint." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (citation omitted).

After filing the EEOC charge, a plaintiff must wait at least sixty days before initiating a civil action. 29 U.S.C. § 626(d)(1). If the EEOC investigates and then dismisses the charge, then a plaintiff has ninety days from the giving of notice of such dismissal by the EEOC to file suit. 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1).

A plaintiff's failure to exhaust administrative remedies concerning an ADEA or a Title VII claim "deprives the federal courts of subject matter jurisdiction over th[at] claim." Jones, 551 F.3d at 300-01 (citing Davis v. N.C. Dep't of Corr., 48 F.3d 134, 138-40 (4th Cir. 1995) (Title VII); Vance v. Whirlpool Corp., 707 F.2d 483, 486-89 (4th Cir. 1983) (ADEA)).

This court assumes (Defendants advance no substantive argument) that Defendants challenge this court's subject-matter jurisdiction based on a failure to exhaust administrative remedies and/or that Plaintiff's claims are untimely. Courts generally treat such a challenge as a factual one. See, e.g., Belyakov v. Med. Sci. & Computing, 86 F. Supp. 3d 430, 440 (D. Md. 2015) ("[The defendant] asserts a factual challenge that [the plaintiff] has not, in fact, exhausted his administrative remedies as he initially claimed."). Accordingly, this court may look beyond the pleadings to make its determination, including to the exhibits attached to the parties' submissions.

-17-

Aside from the potential misstep as to Defendant Wagner, see supra at 11 n.8, and in the absence of any argument from Defendants, Plaintiff appears to have exhausted her administrative remedies, at least as to Defendant N.C. A&T. She filed her EEOC claim on November 28, 2016, within 180 days of the alleged discriminatory acts.[10] She signed the EEOC charge under penalty of perjury. (Blakney Aff., Ex. 1 (Doc. 13-1) at 4.) And Plaintiff followed the appropriate timeline in the interim between the EEOC charge and the initiation of this lawsuit by seeking, within ninety days of receipt of the EEOC's notice on December 20, 2016 at the earliest, an extension of time to file a complaint on March 20, 2017.

Turning to Defendants' apparent challenge to this court's personal jurisdiction, frankly, this court does not see the basis for Defendants' challenge. Plaintiff has alleged that Defendant Wagner is a citizen and resident of Guilford County, North Carolina, employed at the relevant time by Defendant N.C. A&T, a component member of the University of North Carolina, which is a North Carolina state agency.

Therefore, this court is satisfied at this time that it has subject-matter jurisdiction of this case and personal jurisdiction over these Defendants. The court will proceed to

---

[10] But see infra at 37 n.19.

analyze Defendants' motion to dismiss as one brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B.    Defendant Wagner**

This court finds that the ADEA and Title VII claims against Defendant Wagner should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Employees, even supervisory ones, are not liable in their individual capacities for ADEA or Title VII violations. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994) (ADEA); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 178 (4th Cir. 1998) (Title VII).

A plaintiff may pursue age discrimination and sexual harassment claims under the ADEA and Title VII against her employer. See 29 U.S.C. § 623(a); 42 U.S.C. § 2000e-2(a). The ADEA defines "employer" to include persons "engaged in an industry affecting commerce" and employing twenty or more persons. 29 U.S.C. § 630(b). The ADEA's definition of "employer" also includes "any agent of such a person." Id. Title VII's definition of "employer" is similar and also includes "any agent of such a person." 42 U.S.C. § 2000e(b). Plaintiff latches on to this agent reference, suing Defendant Wagner in his individual capacity and official capacity as N.C. A&T's agent.

The Fourth Circuit, however, has found that the inclusion of an employer's agent in the definition of employer under the

ADEA and Title VII merely reflects "'an unremarkable expression of respondeat superior – that discriminatory personnel actions taken by an employer's agent may create liability <u>for the employer</u>.'" <u>Lissau</u>, 159 F.3d at 180 (emphasis added) (quoting <u>Birkbeck</u>, 30 F.3d at 510). Further, even "[e]mployees with authority to make discharge decisions for an employer generally are . . . not individually liable as an employer's 'agent.'" <u>Lane v. Lucent Techs., Inc.</u>, 388 F. Supp. 2d 590, 595 (M.D.N.C. 2005) (citation omitted).

Plaintiff attempts to rely on the Supreme Court's decision in <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57 (1986), to save her claims against Defendant Wagner. Plaintiff argues that the Fourth Circuit's precedent is in tension with that decision. (Pl.'s Br. (Doc. 14) at 17.) This court disagrees. One of the Supreme Court's holdings in <u>Vinson</u> – actually quoted by Plaintiff, (Pl.'s Br. (Doc. 14) at 17) – was that "the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors." <u>Vinson</u>, 477 U.S. at 72 (citation omitted). This court fails to see any tension between the cases; rather, the cases strike this court as harmonious. In <u>Vinson</u>, before remanding the case, the Supreme Court considered and analyzed several possible rules of employer liability, not employee

liability. See id. at 69-73. The Fourth Circuit's later pronouncement that Congress defining "employer" to include an agent was "an unremarkable expression of respondeat superior . . . [,]" Birkbeck, 30 F.3d at 510, is consistent with the Supreme Court's analysis. While the doctrine of respondeat superior might make an employer liable for the acts of its employees, supervisors, and agents, it does not follow, as Plaintiff would have it, that an employee is liable under the ADEA or Title VII for those same acts.

Plaintiff alleges that N.C. A&T was her (and Dr. Wagner's) employer, and she may not bring the ADEA or Title VII claims against Defendant Wagner in his individual capacity. Defendant Wagner's potential liability, therefore, must be premised upon his role as an agent of a state agency, and any potential recovery against him only in his official capacity, see Harvey v. Blake, 913 F.2d 226, 227-28 (5th Cir. 1990) – to the extent that the Fourth Circuit has not foreclosed that option, compare Hoffman v. Baltimore Police Dep't, 379 F. Supp. 2d 778, 780 n.2, 790 (D. Md. 2005) (relying on Lissau to dismiss Title VII claims against defendant in his official capacity), with Scannell v. Bel Air Police Dep't, 968 F. Supp. 1059, 1067 (D. Md. 1997) (collecting cases) ("[A] long line of authority makes plain that individuals may be sued in their official capacity if they are

substantially identified with the defendant organization named in the EEOC charge.").[11]

Plaintiff attempts to sue Defendant Wagner in his official capacity as an agent of N.C. A&T. Supervisory employees may be sued in their official capacities as agents of their state employer, i.e., not as state officials themselves (which Dr. Wagner is not). See Turner v. Randolph Cty., 912 F. Supp. 182, 185 (M.D.N.C. 1995) (citing Sauers v. Salt Lake Cty., 1 F.3d 1122, 1125 (10th Cir. 1993)); see also Bryant v. Locklear, 947 F. Supp. 915, 918 (E.D.N.C. 1996) (citation omitted) (stating that an individual may be sued in his official capacity "if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or condition of employment").

Plaintiff does not allege that Defendant Wagner was her supervisor. In fact, on her EEO intake form from the North Carolina Office of State Human Resources, Plaintiff indicated

---

[11] The Fourth Circuit's holding in Lissau is limited to supervisors in their individual capacities, but the Fourth Circuit's analysis seems to foreclose liability against supervisors in any capacity. See Lissau, 159 F.3d at 180-81; see also Huff v. Sw. Virginia Reg'l Jail Auth., Civil Action No. 1:08cv00041, 2009 WL 395392, at *6 (W.D. Va. Feb. 17, 2009), adopted by, Civil Action No. 1:08cv00041, 2009 WL 674388 (W.D. Va. Mar. 12, 2009) ("[T]he 'official capacity' to which [plaintiff] refers is exactly the capacity that the Lissau court found insufficient to confer liability under Title VII.").

Defendant Wagner was not her supervisor. (See Blakney Aff.,
Ex. 1 (Doc. 13-1) at 6.) She explicitly refers to others as her
supervisors – e.g., she visited Assistant Dean Williams,
"together with her supervisor," (Compl. (Doc. 4) ¶ 30); "Lavicia
Jeter, A&T's Clinic Supervisor," (id. ¶ 69); "Blakney's
supervisor said that she would keep Blakney's overall evaluation
as 'outstanding,'" (id. ¶ 25). And Plaintiff addressed her
resignation letter to "Ms. P. Webb FNP – Clinical Director [and]
Ms. L. Jeter – Supervisor." (Defs.' Mot. to Dismiss, Ex. 1 (Doc.
7-1).) On the other hand, Plaintiff plausibly alleges that Dr.
Wagner might have had some control over her termination or
condition of employment. (See, e.g., Compl. (Doc. 4) ¶ 32
("Wagner issue[d] to Blakney a written warning . . .
threaten[ing] plaintiff with dismissal.").)

Nevertheless, even assuming arguendo that Plaintiff has
sufficiently alleged supervisory authority by Dr. Wagner to make
him amenable to an official-capacity suit, such a claim would
ultimately fail because it "would be wholly duplicative of
Plaintiff's suit against the State of North Carolina." Johnson
v. North Carolina, 905 F. Supp. 2d 712, 721 (W.D.N.C. 2012). In
Kentucky v. Graham, the Supreme Court noted that, "[o]fficial-
capacity suits . . . 'generally represent only another way of
pleading an action against an entity of which an officer [or

employee] is an agent.'" 473 U.S. 159, 165-66 (1985) (quoting

Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 690 n.55

(1978)). Therefore, "[a]s long as the government entity receives

notice and an opportunity to respond, an official-capacity suit

is, in all respects other than name, to be treated as a suit

against the entity." Graham, 473 U.S. at 167 (citation omitted).

Here, Plaintiff has sued her state employer, N.C. A&T, and N.C.

A&T has received notice and responded.

In sum, Plaintiff's ADEA and Title VII claims for relief

against Defendant Wagner – which, as will be explained, are

Plaintiff's first through third claims – will be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(6). See Lane,

388 F. Supp. 2d at 595, 601 (granting individual defendants'

motions to dismiss for failure to state a claim where defendants

argued there was no individual liability under the ADEA or Title

VII).

### C.  **Constructive Discharge**

Plaintiff's fundamental claim against N.C. A&T is

constructive discharge, and this court will consider it first.

Courts generally consider constructive discharge claims separate

and apart from the umbrella of the discrimination claim under

which they are covered because of the different analysis

involved. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423,

434 (4th Cir. 2004); <u>Martin v. Scott & Stringfellow, Inc.</u>, 643 F. Supp. 2d 770, 782 (E.D. Va. 2009).

A plaintiff can assert a claim arising from the loss of her job under the ADEA and Title VII without showing that her employer actually discharged her. Constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985) (citations and internal quotation marks omitted). A plaintiff must, therefore, prove two elements, which are the same in the ADEA and Title VII contexts: "deliberateness of the employer's action, and intolerability of the working conditions." <u>Id.</u> However, "[b]ecause the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." <u>Honor v. Booz-Allen & Hamilton, Inc.</u>, 383 F.3d 180, 187 (4th Cir. 2004) (citation and internal quotation marks omitted).

"Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" <u>Bristow</u>, 770 F.2d at 1255 (quoting <u>E.E.O.C. v. Fed. Reserve Bank of Richmond</u>, 698 F.2d 633, 672 (4th Cir. 1983)). A plaintiff must allege an "employer's specific intent

to force [her] to leave," which can be shown by direct evidence or inferred through circumstantial evidence. Bristow, 770 F.2d at 1255 (citations omitted). Difficult working conditions do not suffice to show an employer's intent, especially where "all employees are treated identically." Id. (citation omitted). An employee can also establish the intent element by showing that her resignation was a "reasonably foreseeable consequence" of the alleged discrimination. See Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1355-56 (4th Cir. 1995).

As part of a prima facie ADEA or Title VII claim, a plaintiff must plausibly allege adverse employment action on the basis of unlawful age or sex discrimination. See Henson v. Liggett Grp., Inc., 61 F.3d 270, 274 (4th Cir. 1995); Honor, 383 F.3d at 189. Plaintiff alleges facts that might allow the court to infer N.C. A&T's specific intent to force Plaintiff to resign based on unlawful age discrimination but not on sex discrimination. Her constructive discharge allegation nevertheless fails because she does not plausibly allege intolerable working conditions.

As to an intent based on sex bias, Defendant Wagner's lubrication statement, while unpleasant, does not suggest any sex bias. It was not discriminatory in any manner, and it was directed to a patient, not Plaintiff. Plaintiff asserts in her

response brief that the younger nurse who was excelling at intakes was a male, (Pl.'s Br. (Doc. 14) at 17),[12] and she alleges in the Complaint that the male nurse was not written up on September 9th, when the other nurses were. (See Compl. (Doc. 4) ¶ 33.) Even if this court credits the first allegation, Plaintiff does not allege that the male nurse was not excelling at patient intakes or that she was performing consistently with the male nurse. The Complaint contains no other allegations regarding sexual discriminatory intent, motivation, or actions.

The allegations supporting an intent based on age bias are a closer call. While none of Defendant Wagner's direct comments to Plaintiff had anything to do with age, at this stage of the proceedings, the court credits Plaintiff's allegation that she was advised of Defendant Wagner's intent to replace the older nurses with younger ones.[13] While the allegation is somewhat

_____

[12] Plaintiff asserts for the first time in her response brief not only that the younger nurse excelling at intake was a male nurse, but also that he was "falsifying the records." (Pl.'s Br. (Doc. 14) at 17.) This court does not credit such a noteworthy and unsupported allegation when not alleged in the Complaint. See Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (reiterating that a complaint may not be amended by responsive briefs to a motion to dismiss).

[13] Although this allegation might be inadmissible hearsay at trial, the court does not weigh the facts at this stage of the proceedings and draws all inferences in favor of Plaintiff. See In re Bristol Myers Squibb Co. Sec. Litig., 586 F. Supp. 2d 148, 171 n.9 (S.D.N.Y. 2008).

vague and lacking in context, it is enough to cause the court not to find one way or the other on the issue, which it need not do because Plaintiff has failed to plausibly allege her working conditions were intolerable.

The intolerability of working conditions is measured by "the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." Bristow, 770 F.2d at 1255 (citations omitted). "Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." Id. The law protects an employee "from a calculated effort to pressure [her] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by [her] co-workers." Id.

The caselaw suggests that the working conditions must be truly unbearable. In Reed v. Airtran Airways, for example, another district court in this circuit found that plaintiff had plausibly alleged an objectively intolerable work environment. 531 F. Supp. 2d 660, 667 (D. Md. 2008) (dismissing plaintiff's ADEA constructive discharge claim nevertheless because she failed to "plausibly allege that AirTran deliberately made [her] working conditions intolerable based on her age"). There, plaintiff had alleged numerous incidents of verbal and physical abuse, "including supervisors and coworkers yelling at

[plaintiff] in front of other employees and customers, mocking her during an annual review, throwing a stapler at her, hitting her with a baggage cart, tossing her badge at her, and berating her when she complained." Id. The plaintiff had also alleged several incidents of graffiti on her car and front door – cumulatively leading to the court's finding that plaintiff "legitimately feared for her safety if she returned to work, thus rendering her working conditions objectively intolerable." Id.; see also Giant Food, 370 F.3d at 434 (affirming district court's finding that supervisors yelling at plaintiff, telling her she was a bad manager, chastising her in front of customers, giving her poor evaluations, and requiring her to work with an injured back did not establish objectively intolerable working conditions); McMillian v. Lab. Corp. of Am., 399 F. Supp. 2d 670, 673 (M.D.N.C. 2005) (denying motion to dismiss constructive discharge claim where plaintiff alleged that he had a disability impairing his ability to drive at night, which defendants knew about and allegedly required him to drive at night anyway).

A fundamental problem with Plaintiff's constructive discharge theory is that she alleges that she resigned because of her subjective fear that she would lose her retirement benefits if she were terminated, not because of objectively intolerable working conditions. Defendants argue that her

alleged fear is without basis because retirement benefits are
only forfeited under North Carolina law in limited
circumstances, which are not relevant here. (See (Defs.' Reply
to Pl.'s Resp. ("Defs.' Reply Br.") (Doc. 17) at 4 (citing N.C.
Gen. Stat. § 135-18.10A).) Regardless of the authorities cited
by Defendants, however, Plaintiff alleges no facts to allow the
court to infer that, even if she were terminated, she would have
lost her benefits, and Plaintiff presents no legal authority to
support her speculative conclusions. Plaintiff's allegations in
this regard are legal conclusions this court is not bound to
accept as true at this stage of the proceedings. See Iqbal, 556
U.S. at 678. Further, even if this court found Plaintiff's
subjective belief as to this legal conclusion supported by
factual allegations (it does not), an employee's subjective fear
that she will be terminated, whether due to her age, sex, or
otherwise, does not create an objectively intolerable work
environment. See Alba v. Merrill Lynch & Co., 198 F. App'x 288,
294-95 (4th Cir. 2006) (citing Honor, 383 F.3d at 183-87; Giant
Food, 370 F.3d at 434) (affirming summary judgment for defendant
on ADEA constructive discharge claim where employer allegedly
threatened plaintiff with loss of retirement benefits if he
refused to retire).

Further, this court does not find that Plaintiff's work environment was objectively intolerable. Her claims stem from Defendant Wagner's comments, the implementation of the twenty-minute intake policy, and the related consequences arising from her inability to comply with such policy. For the reasons already provided, this court does not find Defendant Wagner's comments rise to the level of creating an intolerable workplace.[14] And Plaintiff's own allegations establish that the allegedly harsh policy with which she was forced to comply was not more burdensome than that faced by her co-workers. See Bristow, 770 F.2d at 1255. To the extent that Plaintiff alleges her situation was unique because she and only one other nurse were responsible for patient intakes during her shift, that still leaves one similarly situated employee facing equally harsh conditions, and any significance to the uniqueness of Plaintiff's situation is belied by the alleged fact that the other nurses (i.e., those not on Plaintiff's shift), were written up for intake deficiencies as well. In addition, without more, the alleged inquiry by N.C. A&T into Ms. Cole's planned

---

[14] Plaintiff also alleges that Defendant Wagner told her that she "was in the wrong profession if she thought that she would not have to come to work [on a snow day]," (Compl. (Doc. 4) ¶ 26), and that, if Plaintiff made a mistake, Defendant Wagner would inform the patient, (id. ¶ 27). These comments are not contributory to an intolerable work environment (or discriminatory).

retirement creates no inference of intolerable working conditions.

Plaintiff's resignation letter, which this court has already found it proper to consider, see supra at 2 n.2, does not further her allegations. In that letter, Plaintiff wrote: "After careful consideration, I have made the decision to resign in order to retire. Working for N.C. A&T . . . was the dream job that I thought that I always wanted." (Defs.' Mot. to Dismiss, Ex. 1 (Doc. 7-1).) Without finding that the letter undermines Plaintiff's allegations, thereby improperly weighing the evidence, the court notes that the letter further explains the limited nature of Plaintiff's allegations as to an intolerable workplace.

Even at this motion to dismiss stage, construing the facts in the light most favorable to Plaintiff, Plaintiff has failed to allege facts that allow the court to reasonably infer an objectively intolerable workplace. Plaintiff has simply failed to allege that a reasonable person would have found Plaintiff's job, as it existed after N.C. A&T hired Dr. Wagner, intolerable. While Plaintiff alleges that her working conditions were stressful and at times unpleasant, they cannot reasonably be described as sufficiently intolerable to support a finding that

Plaintiff has plausibly alleged constructive discharge under the ADEA or Title VII.

To the extent that Plaintiff's first three claims for relief under the ADEA and Title VII rely on a theory of constructive discharge, they will be dismissed.

### D.    Age Discrimination Claim against N.C. A&T[15]

The ADEA makes it "unlawful for an employer . . . to discharge . . . or otherwise discriminate against any individual [who is at least forty years of age] with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a).

Bearing in mind that a plaintiff at this stage is only required to plausibly allege an ADEA violation, she can do so by plausibly alleging either (i) "direct or indirect evidence relevant to and sufficiently probative of the issue," or (ii) the "judicially created proof scheme originally used in the Title VII context in McDonnell Douglas Corp. v. Green . . . and subsequently adapted for use in ADEA cases." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (citations and

---

[15] The ADEA did not abrogate state sovereign immunity; Title VII did. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). North Carolina has waived immunity to ADEA claims by its state employees. N.C. Gen. Stat. § 143-300.35(a)(2).

internal quotation marks omitted).[16] It is unclear to this court under which avenue Plaintiff intends to proceed.[17] Based on the parties' briefing, the parties appear to assume that Plaintiff relies upon the McDonnell Douglas avenue. That is, they appear to assume that Plaintiff does not allege direct or indirect evidence that N.C. A&T discriminated against her on the basis of age sufficiently probative to survive a motion to dismiss. In light of the uncertainty, this court will address the allegations under both methods.

In the ADEA context, direct evidence is evidence "that the employer announced, or admitted, or otherwise unmistakably indicated that age was a determining factor" in an adverse employment action. Cline v. Roadway Express, Inc., 689 F.2d 481,

---

[16] The Supreme Court "has not squarely addressed whether the McDonnell Douglas [Title VII] framework . . . also applies to ADEA actions." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Because, as in Reeves, the parties here do not dispute the issue, id., and because courts generally apply the McDonnell Douglas framework in the ADEA context, this court does so here. But cf. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174 (2009) (holding that, in an alleged mixed-motives discrimination claim under the ADEA, the burden of persuasion never shifts to the defendant).

[17] To the extent that Plaintiff attempts to allege a claim of hostile work environment, this court finds summarily that Plaintiff's allegations fail to allow the court to reasonably infer that any alleged harassment was sufficient to meet the "high bar [needed] to satisfy the severe or pervasive test" in establishing a hostile work environment claim under the ADEA or Title VII. See E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (2008).

485 (4th Cir. 1982). "If believed, direct evidence would prove the existence of a fact . . . without any inference or presumptions." Gaines v. McDonald, 152 F. Supp. 3d 464, 470 (M.D.N.C. 2015) (citation and internal quotation marks omitted).

Plaintiff's allegation that her supervisor advised that Dr. Wagner intended to replace the older nurses with younger ones could be direct evidence probative of the issue. Even taking the allegation as true at this motion to dismiss stage, however, without any context as to the timing of the statement or the relationship between Dr. Wagner's intent, the supervisor's advisement of such intent, and any actions as to Plaintiff, the court is unable to find that the isolated allegation is direct evidence of discrimination. See McCray v. Pee Dee Reg'l Transp. Auth., 263 F. App'x 301, 306 (4th Cir. 2008) (certain citations omitted) (citing Birkbeck, 30 F.3d at 511-12) ("While isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action."). The allegation requires the presumption that Dr. Wagner was a decision maker and an inference of causation between the adverse employment action and Dr. Wagner's intent (which Plaintiff might ultimately be able to show at a later stage). See Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1152-53 (8th Cir. 2007) (finding that vice president's statement that he

"intended to hire 'young studs' to replace the older sales people" was not direct evidence because plaintiff had not demonstrated a specific link between the comments and his termination).

While Dr. Wagner's alleged intent, taken together with the indirect evidence regarding the inquiry into Ms. Cole's retirement and that a younger nurse was said to be excelling at the intakes, are cumulatively somewhat probative of the issue, the court ultimately concludes, drawing all reasonable inferences in Plaintiff's favor, that Plaintiff's age discrimination claim is plausibly alleged under the framework put forth by Plaintiff, relying on circumstantial evidence. See Bodkin v. Town of Strasburg, 386 F. App'x 411, 413 (4th Cir. 2010) (citing Reeves, 530 U.S. at 142; Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004)) ("ADEA claims sought to be proven using circumstantial evidence are analyzed under the burden-shifting framework established in McDonnell Douglas.").

Under the ADEA, a plaintiff can establish a prima facie case of age discrimination by showing that: (i) she was a member of the protected age group by being at least forty years old; (ii) she suffered an adverse employment action; (iii) at the time of such adverse employment action(s), she was performing her job at a level that met her employer's legitimate

expectations; and (iv) if discharged or demoted, her position remained open or she was replaced by someone of comparable qualifications that was substantially younger; if not discharged, that she was treated worse than similarly situated and substantially younger workers.[18] See Burns, 96 F.3d at 731; McMillian, 399 F. Supp. 2d at 673. Finally, to establish an ADEA claim, "a plaintiff must prove [at trial] that age was the 'but-for' cause of the employer's adverse decision[,]" Gross, 557 U.S. at 176 (citation omitted); however, at the motion to dismiss stage, Plaintiff need only allege that the adverse employment action was motivated by age. See Shenton v. Aerojet Rocketdyne, Inc., Case No. 3:18-cv-00038, 2018 WL 4289326, at *3 & n.3 (W.D. Va. Sept. 7, 2018) (certain citations omitted) (citing Duffy v. Belk, 477 F. App'x 91, 96 (4th Cir. 2012)).

---

[18] In the ADEA context, the replacement employee or the comparator employee need not be outside the protected class, i.e., younger than forty, so long as she is substantially younger. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996); see also Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (citation omitted). The parties dispute whether the replacement employee needs to be comparably qualified. (Even though Plaintiff's own cited authority contains the requirement. (Pl.'s Br. (Doc. 14) at 12 (citing Hill v. Lockheed Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)).)) Only one of the alleged adverse employment actions relates to discharge or demotion, and the court has already concluded that Plaintiff's constructive discharge claim will not survive the motion to dismiss. Therefore, the court need not address any replacement employee's qualifications.

Plaintiff satisfies the first element; she was forty years old during the relevant time and is thus a member of a protected class under the ADEA, see 29 U.S.C. § 631(a). The remaining three elements require more analysis.

### 1. <u>Adverse Employment Actions</u>

Construing the Complaint in the light most favorable to Plaintiff, she alleges a few potentially adverse employment actions from May 2016 to November 2016. Plaintiff specifically asserts that the following are adverse employment actions: (i) the May 15, 2016 performance downgrade;[19] (ii) the August 25, 2016 verbal warning; (iii) the September 9, 2016 written

---

[19] There is an issue of timeliness with the May 15, 2016 downgrade because Plaintiff did not file her EEOC charge within 180 days of that downgrade, and she did not allege continuing discrimination in the EEOC charge. (See Blakney Aff., Ex. 1 (Doc. 13-1) at 4.) Nevertheless, the court addresses the downgrade and finds it was not an adverse employment action.

warning; (iv) the failure to respond on October 28, 2016;[20] and

(v) the November 10, 2016 constructive discharge. (Pl.'s Br.

(Doc. 14) at 2.) This court has already found that Plaintiff has

not sufficiently alleged constructive discharge, and therefore

she has not sufficiently alleged an adverse employment action

under that theory. It will now consider the performance

downgrade and verbal and written warnings.

An adverse employment action is discriminatory conduct that

negatively affects the "terms, conditions, or benefits" of

employment. <u>Munday v. Waste Mgmt. of N.A., Inc.</u>, 126 F.3d 239,

---

[20] The court comprehends Plaintiff's allegation regarding
the timeliness of N.C. A&T's investigative response to be that
Plaintiff might not have resigned if the response was delivered
on October 28th. The court considered the alleged adverse
employment action of the untimely response in finding that
Plaintiff has failed to sufficiently allege her constructive
discharge claim. Absent an allegation that it was otherwise
obligated to respond by a deadline, this court sees no
independent significance to the timeliness of N.C. A&T's
response. Relatedly, the court notes Plaintiff's allegation that
N.C. A&T delivered the report to an employment mailbox, but the
Complaint contains no allegation that such delivery was improper
or meant to evade Plaintiff's attention, as opposed to merely
inconvenient. Plaintiff's failure to plead a date certain as to
when she received the investigative report also leaves the court
pondering why Plaintiff could not have rescinded her
resignation, not effective December 31, 2016, after she received
the investigation report.

243 (4th Cir. 1997).[21] Typically, "[a]n adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Merely because an employee disagrees with or finds an employer's decision unappealing does not make it an adverse employment action. See, e.g., Von Gunten v. Md., 243 F.3d 858, 867 (4th Cir. 2001), abrogated by, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Action less severe than discharge or demotion can qualify. For example, a downgrade of a performance evaluation can be actionable when it alters the terms or conditions of employment. See, e.g., James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (citation omitted). However, "absent demotion, firing, or the failure to hire and promote, other adverse employment actions must generally impact an employee's

---

[21] Munday involved an alleged adverse employment action in the Title VII context, but the analysis of what constitutes an adverse employment action is the same in the Title VII and ADEA contexts. See, e.g., Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 457-61 (E.D. Va.), aff'd, 738 F. App'x 169 (4th Cir. 2018).

pay, potential for continued employment, or likelihood of promotion within the organization." <u>Wilson</u>, 290 F. Supp. 3d at 457; <u>see also</u> <u>Boone v. Goldin</u>, 178 F.3d 253, 256-57 (4th Cir. 1999) (concluding that, "absent any decrease in compensation, job title, level of responsibility or opportunity for promotion," an adverse employment action must have a significant detrimental effect on a plaintiff).

Plaintiff asserts that the May 15th performance downgrade, the August 25th verbal warning, and the September 9th written warning were adverse employment actions under the ADEA.

A downgrade of a work evaluation can affect a term, condition, or benefit of employment "if it has a tangible effect on the terms or conditions of employment." <u>James</u>, 368 F.3d at 377 (citations omitted). To amount to an adverse employment action, the employer subsequently must use the downgraded evaluation to "detrimentally alter the terms or conditions of the recipient's employment." <u>Id.</u> (citations and internal quotation marks omitted). "An evaluation merely causing a loss of prestige or status is not actionable." <u>Id.</u> (citation omitted).

Here, Plaintiff alleges that her performance evaluations were more than satisfactory until N.C. A&T employed Dr. Wagner. She alleges she had never received a warning in any form prior

to Defendant Wagner's arrival. Her April 4, 2016 review was outstanding, despite Defendant Wagner having been employed by N.C. A&T for approximately eight months. Shortly thereafter, Defendant Wagner told Plaintiff that "nobody is outstanding" and apparently caused her next evaluation to be downgraded to "very good," noting that she needs to "pay attention to detail." (Compl. (Doc. 4) ¶¶ 23-24; see Blakney Aff., Ex. 1 (Doc. 13-1) at 4.) Plaintiff avers that, because her supervisory personnel informed her (at some unalleged time and in some unalleged manner) that Defendant Wagner planned to replace the older nurses with younger ones, that Defendant Wagner had a motive for the otherwise unexplained performance downgrade. But Defendant Wagner told Plaintiff why he allegedly caused her evaluation to be downgraded: because he believed that nobody is outstanding in the context of performance evaluations, a harsh, yet not uncommon view for a manager to take, fairly or not. And Plaintiff's own allegations establish that she was not the only one subject to this more demanding regime.

Further, Plaintiff argues in her brief facts not alleged in her Complaint or contained in her EEOC papers. That is, that the May 15th performance evaluation deprived her of a raise that she had previously earned. (Pl.'s Br. (Doc. 14) at 2.) This court generally would not consider such a significant allegation

raised for the first time in an opposition brief. See Zimmerman,
836 F.2d at 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v.
Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is
axiomatic that the complaint may not be amended by the briefs in
opposition to a motion to dismiss."); cf. Barclay White Skanska,
Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir.
2008) (citations omitted) ("A plaintiff may not amend her
complaint through argument in a brief opposing summary
judgment.") Without such allegation, Plaintiff fails to allege
that N.C. A&T used the downgraded evaluation to detrimentally
alter the terms and conditions of Plaintiff's employment, and
actually alleges that her supervisor told her she would keep
Plaintiff's overall evaluation as outstanding. See James, 368
F.3d at 377-78 (finding that a "highly effective" rating that
was one level below plaintiff's previous annual evaluation yet
generally positive – and in connection with which plaintiff
still "received both a pay-raise and a bonus" – was not a review
that detrimentally altered the terms or conditions of his
employment). This court therefore finds that the May 15th
downgrade is not an adverse employment action.

Plaintiff alleges no facts to allow the court to reasonably
infer that N.C. A&T took any detrimental action altering the
terms or conditions of Plaintiff's employment following the

verbal warning on August 25, 2016. Plaintiff asserts that it was in retaliation for her meeting with Assistant Dean Williams, but the court will address Plaintiff's retaliation claim later. This court finds that the August 25th verbal warning was not an adverse employment action.

However, Plaintiff plausibly alleges that the September 9, 2016 written warning caused detrimental action. Plaintiff alleges in the Complaint that the September 9th warning threatened her with dismissal and caused N.C. A&T to deny her a raise. This constitutes an action impacting Plaintiff's pay and potential for continued employment. See Wilson, 290 F. Supp. 3d at 457. As such, this court finds that the September 9th written warning qualifies as an adverse employment action.

### 2. Job Performance

Plaintiff must plausibly allege that, at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations. See Burns, 96 F.3d at 731. There are two important factors. First, Plaintiff must be satisfactorily performing her job duties "at the time of the adverse employment action." Bodkin, 386 F. App'x at 414 (citation omitted). Second, the decision maker's perception of the job performance is the one that matters. See Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980).

Defendants argue that the Complaint fails to allege that Plaintiff was performing at a level that met N.C. A&T's legitimate expectations. (Defs.' Br. (Doc. 8) at 11.) Defendants assert that this is best evidenced by Plaintiff's admitted inability to meet the twenty-minute standard. (Id.) Plaintiff contends that her job performance met her employer's reasonable expectations, relying on her allegations of stellar job performance before Dr. Wagner's arrival and leading up to the performance downgrade, as well as her overall evaluation remaining outstanding immediately after the May 15th downgrade. (Pl.'s Br. (Doc. 14) at 12-13, 15.) Plaintiff also argues that that the twenty-minute intake window was an unreasonable expectation. (Id. at 15.)

The court has already found that only the September 9th written warning was an adverse employment action. Therefore, while Plaintiff's job performance was satisfactory until at least May 2016, and likely until the twenty-minute procedure was formally implemented in June 2016, the more relevant period of this inquiry is around August and September 2016. See Bodkin, 386 F. App'x at 414. By that time, Plaintiff might not have been performing her job duties at a level that met N.C. A&T's expectations, at least in its perception. See Smith, 618 F.2d at 1067.

But there appear to be fair questions as to whether the expectations were legitimate and reasonable and whether Plaintiff was failing to meet N.C. A&T's expectations or those solely of Defendant Wagner. This inquiry requires a resolution of facts that is inappropriate at this stage. See Moser v. Driller's Serv., Inc., 988 F. Supp. 2d 559, 564 n.10 (W.D.N.C. 2013) (citing Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515-17 (4th Cir. 2006)) ("When the legitimate expectations of an employer are at issue . . . both the employer and the employee may present evidence of the expectations themselves and their legitimacy."). Therefore, the court cannot find that Plaintiff has failed to plausibly allege that she was performing her job at a level that met her employer's legitimate expectations.

### 3. Similarly Situated and Substantially Younger Workers

Plaintiff must allege facts that allow the court to reasonably infer that she "was treated more harshly than other similarly situated younger employees." See Alba, 198 F. App'x at 294 (citing Hill, 354 F.3d at 285; Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)). This inquiry involves comparing a plaintiff's treatment with the treatment of substantially younger persons for similar conduct. Alba, 198 F. App'x at 295; McMillian, 399 F. Supp. 2d at 673. That is, a plaintiff must sufficiently allege that a comparator employee

engaged in similar conduct and that the employer treated the comparator better than the plaintiff. See Alba, 198 F. App'x at 295.

Plaintiff alleges that N.C. A&T's human resources department told Ms. Cole (not Plaintiff) that one significantly younger nurse was excelling at the new patient-intake process. Plaintiff does not allege that the younger nurse engaged in similar conduct, i.e., failed to meet the new intake procedures. If in fact the younger nurse was excelling at the new intake, then that might explain any disparate treatment, not an age bias. If in fact the younger nurse was not excelling and was failing to meet the patient intake at a similar rate as Plaintiff, then that supports a claim of disparate treatment. But, because of the inference of age bias created by the allegation of Dr. Wagner's discriminatory intent to replace the older nurses with younger ones, these are inquiries better suited for the summary judgment stage, and Plaintiff has alleged enough here. See McMillian, 399 F. Supp. 2d at 674 (reiterating that the McDonnell Douglas analysis "is a fact intensive analysis . . . not normally suitable ground to cover in deciding a motion to dismiss"). Given the age bias alleged, the court declines to engage in a sua sponte analysis, or to credit

Defendants' arguments concerning the non-discriminatory justifications at this time.

Plaintiff has sufficiently alleged that the September 9th written warning was an adverse employment action. The court sees her satisfactory job performance as a factual issue not to be resolved at this juncture. And the allegations regarding the comparators, when coupled with the allegations of Dr. Wagner's discriminatory intent (which can be imputed to N.C. A&T at this stage), are sufficient. Plaintiff has alleged enough to allow this court to reasonably infer unlawful age discrimination.

Defendants' motion to dismiss Plaintiff's first claim for relief under the ADEA will be denied as to the September 9th written warning and resulting adverse actions, such as its impact on Plaintiff's compensation.

**E.   Sex Discrimination Claim Against N.C. A&T[22]**

Title VII makes it an "unlawful employment practice" to "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). As under the ADEA, "[a] plaintiff may establish a discrimination claim under Title VII through two avenues of proof." Thomas v. Delmarva Power & Light Co., 715 F. App'x 301, 302 (4th Cir.), cert. denied, ____ U.S. ____, 139 S. Ct. 245 (2018) (citation omitted). A plaintiff can proceed under the mixed-motive

---

[22] Because Plaintiff did not respond to Defendants' specific argument to dismiss Plaintiff's Title VII sex discrimination claim, Defendants assert that this court should treat their motion on this claim as uncontested. (Defs.' Reply Br. (Doc. 17) at 2.) They rely on Local Rule 7.3(k) and two unreported decisions from this district. (Id.) One of those decisions, Page v. Select Portfolio Servicing, Inc., was a Magistrate Judge's report and recommendation adopted by this court. No. 1:12CV900, 2013 WL 4679428, at *1 (M.D.N.C. Aug. 30, 2013), adopted by, No. 1:12CV900, 2013 WL 5462282 (M.D.N.C. Sept. 30, 2013). Defendants misconstrue the Local Rules, the Magistrate Judge's decision in Page, and the court's language – which Defendants selectively quote – in Howell v. N.C. Cent. Univ., No. 1:16CV576, 2017 WL 2861133, at *9 (M.D.N.C. July 5, 2017), as requiring the court to treat the specific issue as uncontested. Suffice it to say that neither Local Rule 7.3(k) nor this court's precedent requires such a result.

framework,[23] establishing a claim of sex discrimination through direct or circumstantial evidence that "discrimination motivated the employer's adverse employment decision." Id. (citation and internal quotation marks omitted). Or a plaintiff can proceed under the McDonnell Douglas framework. Id. (footnote and citation omitted).

Again, it appears to this court that Plaintiff is proceeding under the latter framework, but, unlike the ADEA claim, the court sees no allegations that sex discrimination was a motivating factor in any alleged adverse employment actions. Plaintiff alleges that the male nurse did not receive a written warning on or around September 9th when other nurses did, and thus was treated differently during the performance review process. But she alleges no facts that allow the court to reasonably infer that the basis for such treatment was at all motivated by sexual discrimination. The court therefore, proceeds on the assumption that Plaintiff is attempting to plausibly allege her prima facie case under the McDonnell Douglas framework.

_____

[23] In the non-retaliatory Title VII discrimination context, a plaintiff need not establish that sex was the but-for cause of the employer's adverse decision, only a "motivating factor." Gross, 557 U.S. at 175 (citing 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B)).

The analysis under Title VII is similar to that under the ADEA, the only difference being that a plaintiff must plausibly allege in the Title VII sex discrimination context different treatment of a similarly situated employee that is actually outside of the protected class. <u>Coleman</u>, 626 F.3d at 190.[24] Thus, little analysis is needed, as the court incorporates the analysis on the first three elements of Plaintiff's ADEA discrimination claim here.

Plaintiff satisfies the first element of the prima facie case. As a woman, she is a member of a protected class. <u>Garrow v. Economos Props., Inc.</u>, 242 F. App'x 68, 70-71 (4th Cir. 2007) (citation omitted). The court has already found that the September 9th written warning was an adverse action, and that the other alleged adverse actions were not. The court again

---

[24] This court has already found that Plaintiff did not sufficiently allege constructive discharge. Even if she had, the court notes that any claim relying on the discharge as an adverse employment action would likely fail in the Title VII discrimination context for the additional reason that she fails to allege that she was replaced by someone outside of the protected class, i.e., a male. <u>See</u> <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 486-89 (4th Cir. 2005) (collecting cases) ("[T]his rule is so well-settled in this circuit that we have previously affirmed dismissals under prong four without even issuing published decisions"; yet noting exceptions to prong four not applicable here); <u>see also</u> <u>Alba</u>, 198 F. App'x at 294 (applying the <u>McDonnel Douglas</u> framework to a constructive discharge claim). Plaintiff alleges that she was replaced with a much younger certified medical assistant, but not that he was a man.

makes no finding of implausibility as to Plaintiff's job performance.

As to different treatment of similarly situated employees outside of the protected class, Plaintiff alleges only that a single male nurse was not written up when the other nurses were on September 9, 2016. Plaintiff does not allege that the other nurses who received written warnings were all female, but the court can reasonably infer as much. As with the younger nurse who was extolled as excelling at intake,[25] however, Plaintiff fails to allege that the lone male nurse should have been written up. She does not allege that he was failing to check in 100% of patients within twenty minutes or that he did not meet the criteria for excelling. She later adds in her response brief that the male nurse was falsifying records yet still noted as excelling. (Pl.'s Br. (Doc. 14) at 17.) But the court declines to credit an unsupported and conclusory allegation concerning falsification of records that was not contained in the Complaint or any of the EEOC documents. See Zimmerman, 836 F.2d at 181. Further, there is no indication that N.C. A&T or any of the

---

[25] The young nurse extolled as excelling and the male nurse who was not written up appear to be the same person. (See Pl.'s Br. (Doc. 14) at 17.)

supervisors were aware of any falsifications at the time of the evaluations.

Unlike Plaintiff's age-bias allegations that support an inference of discriminatory intent, however, there are no allegations regarding any intent or motivation based on sex bias to buttress such an inference for Plaintiff's Title VII sex discrimination claim. Plaintiff's second claim for relief alleging discrimination under Title VII will be dismissed.[26]

---

[26] Alternatively, to the extent that Plaintiff attempts to sufficiently establish a prima facie case of discriminatory discipline to survive a motion to dismiss (a point that Defendants raise as a precaution, (Defs.' Br. (Doc. 8) at 10-11)), she has failed to do so under the ADEA or Title VII. In that context, a plaintiff must establish facts to allow this court to reasonably infer that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of those outside the protected class. Thomas, 715 F. App'x at 303 (citing Hoyle, 650 F.3d at 336) (directing district courts to "compare only discipline imposed for like offenses" and that "the seriousness of the[] respective offenses must be clearly established"). Aside from the unsupported and unalleged assertion that a younger male nurse was falsifying records yet noted as excelling at intake, Plaintiff fails to allege any misconduct by those outside of the protected class.

## F.    Retaliation[27]

The ADEA and Title VII also prohibit retaliation by employers against employees for opposing any unlawful employment practices or for participating in any manner in any investigation into discriminatory conduct under the ADEA or Title VII. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e-3(a) (Title VII).

To survive a motion to dismiss in the ADEA and Title VII retaliation context, the burden is on the plaintiff to plausibly allege that: (i) she engaged in a protected activity; (ii) an employer took adverse employment action against her; and (iii) there exists a causal link between the protected activity and the adverse employment action. Laber, 438 F.3d at 432 (ADEA); Coleman, 626 F.3d at 190 (citation omitted) (Title VII); see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015). If a plaintiff makes such a showing then, under the burden-shifting of McDonnell Douglas, an employer must proffer "a legitimate, non-discriminatory reason" for the alleged

---

[27] It is unclear from the Complaint under what authority Plaintiff brings her retaliation claim. In her opposition brief, she clarifies that she brings her retaliation claim under the ADEA and Title VII. (Pl.'s Br. (Doc. 14) at 7-8.) The court will construe Plaintiff's retaliation clam as she clarifies. The court thinks it likely (without finding) that a retaliation claim brought under other authority against N.C. A&T might run into sovereign immunity issues.

adverse employment action. Laber, 438 F.3d at 432 (citations omitted). Generally, however, an employer's legitimate, non-discriminatory reason cannot be established from the face of the complaint, and the court's inquiry at this stage is merely whether an alternative, non-discriminatory explanation renders the allegations implausible. Woods v. City of Greensboro, 855 F.3d 639, 650, 652 (4th Cir.), cert. denied sub nom., City of Greensboro v. BNT Ad Agency, LLC, ____ U.S. ____, 138 S. Ct. 558 (2017).

"[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). The conduct alleged here strikes the court as oppositional. "The Fourth Circuit has articulated an expansive view of what constitutes oppositional conduct," including informal complaints and grievances, and "voicing one's opinions in order to bring attention to an employer's discriminatory activities." Royster v. Gahler, 154 F. Supp. 3d 206, 234 (D. Md. 2015) (internal quotation marks and citation omitted). The oppositional activity must be directed to an unlawful employment practice, whether that practice is actually unlawful or one that an employee reasonably believes to be unlawful. See DeMasters v. Carilion Clinic, 796 F.3d 409, 417

(4th Cir. 2015) (citations omitted). Thus, the "threshold for oppositional conduct is not onerous." Id. Rather, "'[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.'" Id. (quoting Crawford v. Metro. Gov't of Nashville and Davidson Cty., 555 U.S. 271, 276 (2009)).

Plaintiff asserts that the August 18, 2016 meeting with Assistant Dean Williams was protected activity. Given the expansiveness of protected activity, this court has little trouble finding that this meeting between Plaintiff, a supervisor, and Assistant Dean Williams constituted protected activity, at least in the Title VII context. (The court notes that there is not a single allegation that Plaintiff complained to anyone about age discrimination.) While this court agrees with Defendants that Plaintiff alleges very little concerning the substance of the discussion with Assistant Dean Williams, she alleges that she met with him to address her concerns about sexual comments, which this court finds that she believed to be discriminatory.

As to the second element, what constitutes an adverse action in the ADEA and Title VII retaliation context is broader than in the substantive ADEA and Title VII discrimination

context. See Burlington N. & Santa Fe, 548 U.S. at 64 (citation omitted) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). But not all retaliation is actionable; rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal citation and quotation marks omitted). The standard "is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." Id. at 69.

Plaintiff asserts several adverse employment actions, many taken by Defendant Wagner, against her in the retaliation context: (i) the May 2016 evaluation downgrade from outstanding to very good; (ii) the August 25, 2016 verbal warning; (iii) the September 9, 2016 written warning, threatening Plaintiff with dismissal and preventing a raise; and (iv) the constructive discharge. (Pl.'s Br. (Doc. 14) at 8-9.) The court has already found that the May performance downgrade, the August verbal warning, and the constructive discharge were not adverse employment actions in the ADEA and Title VII substantive discrimination context and that the September 9th written

warning was. Because retaliatory adverse employment action
encompasses a broader range of conduct, the court necessarily
finds that the September 9th written warning was an adverse
employment action here as well. While a constructive discharge
can be an adverse action in the retaliation context, see Holsey
v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984), the showing
required is identical to that in the ADEA and Title VII
discrimination context, see id. Therefore, the court finds that
Plaintiff's alleged constructive discharge was not an adverse
employment action in the retaliation context either. As to the
May downgrade and the August verbal warning, in this context as
well, "a reprimand, without some collateral consequence, cannot
be an adequate basis for a retaliation claim." Wilson, 290 F.
Supp. 3d at 462 (quoting Emami v. Bolden, 241 F. Supp. 3d 673,
684-85 (E.D. Va. 2017)) ("A negative performance review,
alone . . . does not constitute a materially adverse action.").
The court likewise finds that these were not adverse employment
actions in the retaliation context. The court will also find
that Plaintiff has not plausibly alleged the May 15th downgrade
and the August 25th warning were causally linked to Plaintiff's
protected activity.

As to the causal-link element of a retaliation claim, a
plaintiff must allege facts to show, "at the very least, that

the defendant was aware of her engaging in protected activity."
Constantine v. Rectors and Visitors of George Mason Univ., 411
F.3d 474, 501 (4th Cir. 2005). Courts often look to the temporal
proximity to infer a causal connection between the protected
activity and the retaliatory act. See, e.g., Royster, 154 F.
Supp. 3d at 234 (quoting Constantine, 411 F.3d at 501).

The Complaint adequately establishes N.C. A&T's knowledge
of the protected activity. Plaintiff alleges that she took her
grievance to Assistant Dean Williams, while accompanied by an
immediate supervisor. Thus, at least two relatively senior N.C.
A&T employees had knowledge. The allegations that Defendant
Wagner threateningly stated, on or around September 9, 2016,
that Plaintiff had already met with her supervisors and that he
told Plaintiff that she should have brought her concerns to him,
not the Assistant Dean, establishes Defendant Wagner's knowledge
by the time of the September 9th written warning.

As to temporal proximity, the Complaint alleges that
Plaintiff and one of her supervisors first met with Assistant
Dean Williams on August 18, 2016, to raise her concerns about
Defendant Wagner, including Wagner's allegedly inappropriate
sexual comments. The Complaint alleges that Defendant Wagner
verbally warned Plaintiff regarding her intake deficiencies on
August 25, 2016, and the Complaint alleges that she was

threatened with dismissal via a written warning concerning the same intake issues on September 9, 2016. Plaintiff alleges that she had another conversation with Defendant Wagner on or around the same date. The Complaint establishes sufficient temporal proximity to plausibly allege a causal connection between the protected activity and the September 9th adverse employment action. See Constantine, 411 F.3d at 501 (finding allegations suggesting a four-month lapse between protected activity and retaliation adequate to survive a motion to dismiss).[28]

Relevant caselaw suggests that the degree of temporal proximity present in this case between the protected activity and adverse action is sufficient by itself to allow Plaintiff's Title VII retaliation claim to proceed. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (collecting cases) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]'"); see also Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (quoting

---

[28] To the extent that the May 15, 2016 downgrade could be viewed as an adverse employment action, the court finds no causal link between the protected activity on August 18, 2016, and the downgrade that preceded it by three months.

Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)
("This Court has held that evidence that the alleged adverse
action occurred shortly after the employer became aware of the
protected activity is sufficient to 'satisf[y] the less onerous
burden of making a prima facie case of causa[tion].'").
Nevertheless, this court is unable to plausibly infer the
requisite causal link between the protected activity and the
September 9th warning.

Plaintiff alleges that she went to see Assistant Dean
Williams on August 18th and that she – along with other nurses,
except for a lone male nurse – were written up for their intake
deficiencies on September 9th. The Complaint contains no
allegation that the other nurses had engaged in any type of
protected activity and thus significantly undercuts the causal
link. Plaintiff specifically alleges that the written warning
was regarding her failure to perform multiple patient intakes
under twenty minutes. She admittedly was unable to do that every
time (fair or not), and "[a] negative comment cannot have been
retaliatory if it was true . . . ." Wilson, 290 F. Supp. 3d at
462. It appears that Plaintiff was disciplined due to her
failure to comply with a procedure that was applicable to all
relevant employees, one demanding patient intake within twenty
minutes. See Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d

261, 272 (4th Cir. 2001) (citing <u>Von Gunten</u>, 243 F.3d at 869)
("[T]erms, conditions, or benefits of a person's employment do
not typically, if ever, include general immunity from the
application of basic employment policies or exemption from . . .
disciplinary procedures.").[29] Although this factor, standing
alone, might be insufficient to undermine temporal proximity,
other allegations further undermine the inferences to be drawn
from temporal proximity.

It appears to this court from the Complaint that the new
intake procedure was a topic of consternation within the
relevant N.C. A&T community during the summer of 2016. Because
the adverse employment action taken against Plaintiff related to
issues that arose before her protected activity, it negates to
some extent the inferences drawn from the temporal proximity.
Cf. <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 309

---

[29] This court does not find this analysis inconsistent with
its finding that Plaintiff sufficiently alleged age
discrimination. An age bias might or might not have caused the
September 9th written warning to Plaintiff and others. Plaintiff
has plausibly alleged enough to allow the court to infer that it
could have. The court finds that Plaintiff's protected activity
did not plausibly cause the September 9th written warning, thus
rendering Plaintiff's allegations implausible. Further, there
are no allegations that allow the court to plausibly infer that
the protected activity related to age discrimination. Plaintiff
only alleges that she spoke with Assistant Dean Williams to
express her concerns about Dr. Wagner and his inappropriate
sexual comments.

(4th Cir. 2006) (affirming summary judgment and noting that, "[w]hile temporal proximity . . . can, in some cases, be used to survive summary judgment, it does not suffice" where the actions that led to the adverse employment action began before the protected activity because "an inference of retaliation does not arise").[30]

This court does not analyze any proffered explanations from Defendants and/or decide any questions of pretext, inquiries often inappropriate at this juncture. Rather, the court relies solely on Plaintiff's own allegations in finding that there is no plausible inference of causality to be drawn from the face of the Complaint. For the foregoing reasons, Plaintiff's third claim for relief alleging retaliation in violation of the ADEA and Title VII will be dismissed.

### G. __Remaining Claims__

Plaintiff's fourth claim for relief alleges interference with administrative remedies. She asserts that her administrative remedies are futile, she should not have to

---

[30] To the extent that the August 25th warning could be viewed as an adverse employment action in the retaliation context (this court found it is not), Plaintiff does not allege that Defendant Wagner knew about her meeting with Assistant Dean Williams when Dr. Wagner verbally warned her on August 25th. A defendant's awareness of the protected activity is usually an essential element of a retaliation claim. See Constantine, 411 F.3d at 501.

exhaust them, and Defendants interfered with her ability to preserve them by their late provision of the investigation report. Defendants assert that they are unaware of any cause of action for interference with administrative remedies. (Defs.' Br. (Doc. 8) at 23.)

It is unclear to this court what Plaintiff seeks in her fourth claim for relief. Given this court's finding that Plaintiff exhausted administrative remedies, see supra at 17-18, her fourth claim for relief will be dismissed.

In her fifth claim for relief, Plaintiff brings a claim for punitive damages, specifically alleging that Defendant Wagner acted intentionally and maliciously towards her. This court, however, has already found that all claims against Defendant Wagner should be dismissed. As to Defendant N.C. A&T, punitive damages are not available, as Defendants argue, against a government agency under the ADEA. Fariss v. Lynchburg Foundry, 769 F.2d 958, 967 n.11 (4th Cir. 1985) (citation omitted); see 29 U.S.C. § 626. Punitive damages are also not recoverable from a government agency under Title VII. Williams v. Guilford Tech. Cmty. Coll. Bd. of Trs., 117 F. Supp. 3d 708, 716 (M.D.N.C. 2015) (citing 42 U.S.C. § 1981a(b)(1)).

N.C. A&T is a constituent institution of the University of North Carolina. N.C. Gen. Stat. §§ 116-2, 116-4. "The University

of North Carolina is a state agency." <u>Bryant</u>, 947 F. Supp. at 916 (citing <u>Bd. of Governors of the Univ. of N.C. v. Dep't of Labor</u>, 917 F.2d 812 (4th Cir. 1990)). Defendant N.C. A&T, therefore, cannot be liable to Plaintiff for punitive damages under the ADEA or Title VII. Plaintiff's fifth claim for relief will be dismissed.

## V.    <u>CONCLUSION</u>

In light of the foregoing,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), (Doc. 7), is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(2) is **DENIED**, and Defendants' motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) is **GRANTED IN PART AND DENIED IN PART**, in that: (1) Defendants' motion to dismiss all claims against Defendant Wagner is **GRANTED**, (2) Defendants' motion to dismiss Plaintiff's second, third, fourth, and fifth claims for relief is **GRANTED**, and (3) Defendants' motion to dismiss Plaintiff's first claim for relief is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to amend her Complaint, (<u>see</u> Doc. 14 at 2), is **DENIED.**

This the 20th day of March, 2019.

_____
United States District Judge